IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONGODB, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 25-641-MN |
| | ) |
| FERRETDB INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF MONGODB'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT FERRETDB'S AMENDED COUNTERCLAIMS**

|   |   |
|---|---|
| | Nathan R. Hoeschen (No. 6232) |
| | Virginia K. Lynch (No. 7423) |
| | SHAW KELLER LLP |
| OF COUNSEL: | I.M. Pei Building |
| David Silbert | 1105 North Market Street, 12th Floor |
| Sharif E. Jacob | Wilmington, DE 19801 |
| Kristen E. Lovin | (302) 298-0700 |
| Ryan J. Hayward | nhoeschen@shawkeller.com |
| Theresa M. Dawson | glynch@shawkeller.com |
| Yegina Whang | *Attorneys for Plaintiff MongoDB, Inc.* |
| KEKER, VAN NEST & PETERS LLP | |
| 633 Battery Street | |
| San Francisco, CA  94111-1809 | |
| (415) 391-5400 | |

Dated: January 6, 2026

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

I. FERRETDB'S COUNTERCLAIMS ARE PREEMPTED BY PATENT LAW. ................2

    A. FerretDB fails to rebut that its counterclaims are preempted because they rely on MongoDB's good-faith assertions of patent infringement. ..........................2

    B. The Court should disregard FerretDB's unpleaded allegations. ...............................7

II. THE COURT SHOULD DISMISS FERRETDB'S CLAIMS WITH PREJUDICE. .........................................................................................................................10

CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*800 Adept, Inc. v. Murex Secs., Ltd.*,
    539 F.3d 1354 (Fed. Cir. 2008)..................................................................................................4

*10X Genomics, Inc. v. Vizgen, Inc.*,
    654 F. Supp. 3d 310 (D. Del. 2023)........................................................................................3, 4

*Crye Precision LLC v. Duro Textiles, LLC*,
    No. 15-cv-1681 (DLC), 2015 WL 6509143 (S.D.N.Y. Oct. 28, 2015)..................................6, 7

*E.I. Dupont De Nemours & Co. v. Unifrax I LLC*,
    C.A. No. 14-1250-RGA, 2015 WL 4641615 (D. Del. Aug. 5, 2015)..............................5, 6, 10

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
    362 F.3d 1367 (Fed. Cir. 2004)..................................................................................................4

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*,
    C.A. No. 15-108-RGA, 2020 WL 4584354 (D. Del. Aug. 10, 2020)........................................9

*Kimberly-Clark Corp. v. Johnson & Johnson*,
    745 F.2d 1437 (Fed. Cir. 1984)..................................................................................................4

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
    695 F.3d 1322 (Fed. Cir. 2012)..............................................................................................1, 6

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
    165 F.3d 891 (Fed. Cir. 1998)....................................................................................................9

*Nuance Commc'ns, Inc. v. MModal LLC*,
    C.A. No. 17-1484-MN-SRF (D. Del. Feb. 20, 2018) ................................................................5

*Prime Victor Int'l Ltd v. Simulacra Corp.*,
    682 F. Supp. 3d 428 (D. Del. 2023)...........................................................................................4

*Wilco AG v. Packaging Techs. & Inspection LLC*,
    615 F. Supp. 2d 320 (D. Del. 2009)...........................................................................................6

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999)..................................................................................................2

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988).......................................................................................................7

**Other Authorities**

U.S. Patent No. 8,996,463........................................................................................................8

U.S. Patent No. 10,866,868......................................................................................................8

**Secondary Sources**

Matthews Patent Digest § 34:64 .................................................................................................4

**INTRODUCTION**

FerretDB's Opposition confirms that the Court should dismiss FerretDB's amended counterclaims for false advertising, defamation/commercial disparagement/trade libel (*i.e.*, "defamation"), and tortious interference with FerretDB's existing and prospective business relationships (*i.e.*, "tortious interference") because these counterclaims are based on MongoDB's good-faith assertions of its patent rights and therefore are preempted by federal patent law.[1] FerretDB fails to rebut MongoDB's showing that the amended counterclaims rely on MongoDB's communications asserting its patent rights against FerretDB. The Opposition also fails to identify *any facts* demonstrating that MongoDB's assertions of patent infringement were made in bad faith, as FerretDB must do to survive a motion to dismiss. Unable to make this showing, FerretDB erroneously contends that it need not plausibly plead bad faith to survive a motion to dismiss and, in so doing, misstates the Federal Circuit's holding in *Matthews International Corporation v. Biosafe Engineering, LLC*, 695 F.3d 1322 (Fed. Cir. 2012).

Recognizing this failure, FerretDB's Opposition relies on unpleaded allegations concerning MongoDB's purported conduct. Namely, FerretDB attaches a letter that it declined to include, incorporate, or rely upon in its operative counterclaims and that it inaccurately contends contains only assertions of copyright infringement by MongoDB. The Court should not consider such unpleaded allegations on a motion to dismiss. *See infra* at 7–8. But even if the Court were to consider them, they do not help FerretDB. Among other reasons discussed below, the letter communicates MongoDB's concerns about FerretDB's misappropriation of its software

---

[1] Throughout this brief, MongoDB refers to these three counterclaims (Counts IX, X, and XI) as the "amended counterclaims."

and intellectual property—concerns that overlap with MongoDB's patent infringement allegations in this case.

Lastly, the Court should dismiss FerretDB's amended counterclaims with prejudice. Aside from its counterclaims seeking declaratory judgments of patent noninfringement and invalidity, FerretDB has now failed to state a viable counterclaim in either its original counterclaims pleading or in its currently operative pleading. No amendment could cure the fact that FerretDB's counterclaims are preempted by federal patent law, and so granting further leave to amend would be futile.

For these reasons and those set forth in its opening brief, MongoDB respectfully requests that the Court dismiss FerretDB's amended counterclaims with prejudice for failure to state a claim.

## ARGUMENT

I.   **FERRETDB'S COUNTERCLAIMS ARE PREEMPTED BY PATENT LAW.**

   A.   **FerretDB fails to rebut that its counterclaims are preempted because they rely on MongoDB's good-faith assertions of patent infringement.**

As MongoDB showed in its opening brief, the Court should dismiss FerretDB's amended counterclaims because they are preempted by patent law. FerretDB alleges that it was harmed by certain of MongoDB's communications regarding FerretDB's infringement of MongoDB's patents at issue in this action (the "Asserted Patents"), but federal patent law preempts liability under state tort laws and the Lanham Act for a patentholder's good-faith communications asserting infringement. *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).

In its Opposition, FerretDB fails to rebut MongoDB's showing that the allegedly harmful communications FerretDB relies on for its counterclaims (a) communicated MongoDB's patent

infringement assertions; and (b) were made in good faith.  FerretDB concedes the key fact that the Court needs to grant MongoDB's motion to dismiss: The May 23, 2025 MongoDB blog post, which FerretDB principally relies on in its counterclaims as the source of alleged harm, asserts that FerretDB infringed multiple MongoDB patents.  D.I. 22-1 at 3–4 ("FerretDB has infringed upon MongoDB's patents. . . . Specifically, FerretDB is infringing multiple MongoDB patents that cover how aggregation pipelines are processed and optimized, and other MongoDB functionality that increases the reliability of write operations.").  MongoDB published this blog post the same day that it filed its Complaint in this action, asserting, *inter alia*, four counts of patent infringement against FerretDB.

In its Opposition, FerretDB claims, baselessly, that the May 23, 2025 blog post contains statements that are unrelated to MongoDB's patent infringement allegations in this case.  FerretDB cites the blog post's statements that FerretDB engaged in "imitation, theft, and misappropriation masquerading as compatibility;" that "FerretDB ha[d] attempted to capitalize on over 15 years of MongoDB's research and development;" that FerretDB engaged in "unfair business practices that harm both MongoDB and the broader developer community;" and that FerretDB engaged in "unauthorized misappropriation of MongoDB's intellectual property without permission or investment."  D.I. 22-1 at 3–4.  All these statements, however, fairly and accurately describe MongoDB's patent infringement claims in this case, and FerretDB fails even to attempt to show why that is not so.

Therefore, FerretDB's reliance on *10X Genomics, Inc. v. Vizgen, Inc.*, 654 F. Supp. 3d 310 (D. Del. 2023), is inapt.  *See* D.I. 30 at 8–9.  There, the court declined to dismiss the defendant's various state law counterclaims against the plaintiff and Harvard on patent preemption grounds because the counterclaims "[did] not concern Harvard enforcing its rights as

3

a patent owner, but rather its breach of a promise not to sue [the defendant], its licensee, under the parties' agreement." *10X Genomics, Inc.,* 654 F. Supp. 3d at 328. Specifically, the defendant had alleged that "Harvard acted in bad faith by approving [the defendant's] commercialization plans and accepting royalties from [the defendant] while having knowledge of the allegedly conflicting [] patent agreements" with the plaintiff. *Id.* at 320. Here, by contrast, FerretDB's counterclaims hinge on MongoDB's communications concerning its good faith belief that FerretDB was infringing its patent rights.[2]

FerretDB also fails to show that MongoDB asserted patent infringement in bad faith. In its Opposition, FerretDB never articulates why the Asserted Patents are not infringed, much less provides any facts showing—as it must to survive a motion to dismiss—that MongoDB knew or that any reasonable litigant would have known that the Asserted Patents were not infringed. *See 800 Adept, Inc. v. Murex Secs., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008).

Nor does FerretDB rebut MongoDB's showing that the counterclaims fail to allege that MongoDB knew the Asserted Patents were invalid. FerretDB's failure to address whether MongoDB had knowledge of the purported prior art references is especially glaring since there is no "presumption that the inventor has knowledge of all material prior art." *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed. Cir. 1984). At most, FerretDB's

---

[2] In *10X Genomics*, the court noted that patent law "does not preempt state law tort claims that do not clash with the objectives of federal patent laws or include elements not found in the patent law remedy." *Id.* at 328 (citing *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998)). FerretDB does not make this argument in its Opposition, and therefore it is waived. *See Prime Victor Int'l Ltd v. Simulacra Corp.*, 682 F. Supp. 3d 428, 447–48 (D. Del. 2023) (failure to address an issue in an opposition brief constitutes waiver). Moreover, this aspect of the district court's ruling was erroneous and inconsistent with Federal Circuit precedent. *See* Matthews Patent Digest § 34:64 (noting that, since *Dow Chemical*, the Federal Circuit has preempted state law tort claims so long as there was no bad faith); *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) (applying patent preemption to tortious interference and unfair competition claims).

4

Opposition emphasizes the passing prior art references contained in FerretDB's amended counterclaims. *See* D.I. 30 at 14. But as MongoDB explained in its opening brief, merely naming purported prior art, without more, is insufficient to show that a party asserting patent infringement has done so in bad faith. *See* Opening Br., D.I. 28 at 8 (citing cases).

FerretDB attempts to distinguish the cases that MongoDB cited by arguing that, in those cases, the court dismissed the counterclaims because they only included a single prior art reference or failed to allege invalidity with respect to all the patents at issue. D.I. 30 at 14. Not so. In *E.I. Dupont De Nemours & Co. v. Unifrax I LLC*, the court focused not on the number of prior art references provided by the defendant, but rather on the fact that it "d[id] nothing more" than name the prior art in its pleadings and allege that it rendered the sole patent at issue invalid. C.A. No. 14-1250-RGA, 2015 WL 4641615, at *1 (D. Del. Aug. 5, 2015) (noting that the pleading standard was not "as insubstantial" as the defendant believed). Indeed, FerretDB's prior art references are a stark contrast to those found sufficient to allege bad faith by this Court. *See, e.g.*, Amended Answer & Counterclaims (D.I. 41) at 26–29, *Nuance Commc'ns, Inc. v. MModal LLC*, C.A. No. 17-1484-MN-SRF (D. Del. Feb. 20, 2018) (Ex. A).

FerretDB's "bad faith" argument boils down to this: MongoDB's May 23, 2025 blog post asserted that FerretDB's infringed "multiple" patents but did not specifically identify the Asserted Patents. Opp. Br., D.I. 30 at 12-13. This argument is conclusory and nonsensical. It has nothing to do with whether, in the communications at issue, MongoDB asserted its patent rights in good faith. Moreover, the argument is factually misleading: MongoDB's blog post was filed the *same day* that MongoDB publicly filed its Complaint in this case, which specifically identified the four Asserted Patents and "objectively provid[ed] notice that it believed specific patents were infringed." Opp. Br., D.I. 30 at 12.

5

Unable to show bad faith on MongoDB's part, FerretDB contends—wrongly—that it need not plausibly plead bad faith to survive a motion to dismiss. Citing *Matthews International Corporation*, FerretDB argues that it is "impossible" for the Court to determine whether MongoDB's infringement claims are objectively baseless without discovery or expert testimony. *See* D.I. 30 at 11–12. FerretDB fundamentally misstates *Matthews*'s holding. There, the plaintiff brought claims under the district court's declaratory judgment jurisdiction, and the district court dismissed the claims as insufficiently ripe to support such jurisdiction. *Matthews*, 695 F.3d at 1328. The Federal Circuit *affirmed* the district court's dismissal of the plaintiff's state-law tort claims on patent preemption grounds and held that, even if the defendant had properly pled bad faith, its state-law claims were not yet ripe for review under the district court's declaratory judgment jurisdiction. *Id.* at 1332–33. Accordingly, *Matthews* does not support FerretDB's contention that it need not plead bad faith by MongoDB in order to survive a motion to dismiss its counterclaims.

Indeed, contrary to FerretDB's assertions, courts regularly dismiss claims at the motion to dismiss stage based on a finding of patent preemption. *See, e.g.*, *E.I. Dupont De Nemours & Co.*, 2015 WL 4641615, at *1 (granting motion to dismiss counterclaims for failure to allege bad faith); *Wilco AG v. Packaging Techs. & Inspection LLC*, 615 F. Supp. 2d 320, 325–26 (D. Del. 2009); *Crye Precision LLC v. Duro Textiles, LLC*, No. 15-cv-1681 (DLC), 2015 WL 6509143, at *4–5 (S.D.N.Y. Oct. 28, 2015) (same). The Court can—and should—do so here.

In sum, FerretDB does not seriously dispute MongoDB's showing that its counterclaims and theory of harm hinge on MongoDB's good-faith assertion of MongoDB's patent rights. Accordingly, FerretDB's amended counterclaims are preempted by patent law.

### B. The Court should disregard FerretDB's unpleaded allegations.

In its Opposition, FerretDB attempts to avoid dismissal of its counterclaims by relying on unpleaded allegations regarding MongoDB's purported conduct. Citing an exhibit attached to its Opposition brief, FerretDB asserts that on September 26, 2024, MongoDB sent a letter to a purported prospective customer of FerretDB (the "September 2024 Letter"). D.I. 30 at 7; *see also* D.I. 31-1. FerretDB claims that the September 2024 Letter contains *only* assertions of copyright infringement against FerretDB. *Id*. The September 2024 Letter, according to FerretDB, resulted in FerretDB's exclusion "from the open source database collaboration with the Linux Foundation" and others in the Working Group. D.I. 30 at 5; *see also* D.I. 22, Amended Counterclaims ¶ 32.

As a threshold matter, the Court should ignore FerretDB's unpleaded, eleventh-hour attempt to avoid patent preemption. FerretDB's amended counterclaims, as pleaded, describe correspondence asserting wrongful conduct by FerretDB that encompasses infringement of MongoDB's patent rights. FerretDB alleged that "in one such letter to a potential FerretDB customer, MongoDB asserted: 'FerretDB did not create anything new. Instead, it helped itself to 15 years worth of MongoDB *research and development* in an effort to unfairly capitalize **on our intellectual property**.'" D.I. 22, Amended Counterclaims ¶ 22 (emphasis added). By contrast, FerretDB did not include the relevant content from the September 2024 Letter in its amended counterclaims, nor attach the letter thereto. Indeed, by FerretDB's own admission, its amended counterclaims *do not* rely on the September 2024 Letter specifically, as it contends that this is just one "example" of a number of different letters that MongoDB purportedly sent to FerretDB's customers. *See* D.I. 30 at 1. FerretDB's reliance on the September 2024 Letter is therefore improper. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d

7

Cir. 1988) ("It is axiomatic that [claims] may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

Even if the Court were to consider FerretDB's improper attempt to amend its pleading, the September 2024 Letter does not help FerretDB avoid dismissal on preemption grounds for three reasons.  *First*, the September 2024 Letter is part of a broader course of communications concerning FerretDB's misconduct that ultimately culminated in this patent infringement lawsuit.  Contrary to FerretDB's representations, the September 2024 Letter is not exclusively focused on copyright infringement claims and instead reasonably alleges a course of conduct by FerretDB that encompasses MongoDB's patent infringement allegations.  Specifically, the letter notes that MongoDB is concerned about "preventing third parties from exploiting MongoDB's *software and IP*."  D.I. 31-1 at 2 (emphasis added).  The September 2024 Letter also focuses on "management software, user interfaces, application program interfaces, automation software, monitoring software, backup software, storage software, and hosting software"—many of which are protected by the Asserted Patents.  D.I. 31-1 at 3; *see also* Complaint, D.I. 1 ¶¶ 67–68 (alleging that the '463 Patent is "directed to an inventive aggregation framework system architecture and method to optimize aggregate operations over a database based on data dependencies"); 134–136 (alleging that the '868 Patent "is directed to an inventive distributed database system and method where it can determine if a write operation failed as a result of an error that occurred during that operation and then reexecute that same write operation in that case").  Moreover, the fact that the September 2024 Letter predates this lawsuit is a red herring. *See* D.I. 30 at 9.  That is because "[a] patentee has the right to inform a potential infringer of the existence of the patent, whereby the recipient of the information may adjust its activities, perhaps

8

seek a license, or otherwise act to protect itself. The statute contemplates such notice." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) (citation omitted).

***Second***, FerretDB's reliance on the September 2024 Letter is fatal to its counterclaims for tortious interference and defamation. To state a claim for tortious interference, FerretDB must plausibly allege: (1) FerretDB's reasonable expectancy of entering into a valid business relationship; (2) MongoDB's knowledge of that expectancy; (3) MongoDB's intentional and unjustifiable interference that induced or caused a breach or termination of the expectancy; and (4) damage to FerretDB resulting from MongoDB's conduct. *Int'l Constr. Prods. LLC v. Caterpillar Inc.*, C.A. No. 15-108-RGA, 2020 WL 4584354, at *4 (D. Del. Aug. 10, 2020). But according to FerretDB's own allegations, FerretDB initiated discussions with these would-be business partners in "early ***2025***"—months after MongoDB purportedly sent the September 2024 Letter. D.I. 22, Amended Counterclaims ¶¶ 17–19 (emphasis added). It is therefore implausible for MongoDB to have had knowledge of FerretDB's potential partnership with the Working Group when MongoDB allegedly sent the letter on ***September 26, 2024***. *See* D.I. 22, Amended Counterclaims ¶¶ 100, 109–110.

Moreover, FerretDB's theory of harm for its defamation and tortious interference counterclaims is based on its exclusion from the Working Group. *See* D.I. 22, Amended Counterclaims ¶¶ 100 (alleging that it suffered harm from exclusion from the Working Group in support of its defamation counterclaim); 109–110 (alleging the same for its tortious interference counterclaim). Notably, FerretDB does *not* allege that it lost business from the third party who specifically received the September 2024 Letter. *See, e.g.*, D.I. 22, Amended Counterclaims ¶¶ 100, 108 (generally alleging "lost customers" and "lost sales"). Thus, to the extent that

9

FerretDB suffered any damage (which it did not), that damage could have only resulted from MongoDB's blog post.  *See* D.I. 22, Amended Counterclaims ¶¶ 98–100, 107–112.

**Third**, FerretDB's counterclaim for false advertising under the Lanham Act does not rely on the September 2024 letter, and instead relies solely on the purported harm that resulted from MongoDB's blog post, which FerretDB concedes includes MongoDB's allegations regarding the Asserted Patents.  *See* D.I. 22, Amended Counterclaims ¶ 89 (alleging that MongoDB made false statements "through the internet" and not by letter correspondence).  The September 2024 Letter thus has no bearing on the false advertising counterclaim.

## II.     THE COURT SHOULD DISMISS FERRETDB'S CLAIMS WITH PREJUDICE.

Lastly, the Court should dismiss FerretDB's counterclaims with prejudice.  FerretDB has already had two opportunities to state its counterclaims under Rule 8's pleading standards.  FerretDB requests leave to amend, contending that it could provide unspecified "additional facts and analysis" regarding its invalidity contentions.  D.I. 30 at 16.  But FerretDB's proposed amendments would still fall far short of sufficiently alleging that MongoDB's patent infringement allegations are made in bad faith—and therefore would be futile.  *See E.I. Dupont De Nemours & Co.*, 2015 WL 4641615, at *1 ("[I]f all that were necessary to bring state law counterclaims was an allegation of invalidity and/or non-infringement, with an allegation of 'bad faith,' one would expect to see these sorts of counterclaims in most patent litigation.").  The Court should therefore dismiss FerretDB's inadequately pleaded counterclaims with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should grant MongoDB's motion to dismiss FerretDB's amended counterclaims for false advertising (Count IX), defamation (Count X), and tortious interference with business relationships (Count XI) with prejudice.

|  |  |
|---|---|
|  | /s/ Nathan R. Hoeschen<br>Nathan R. Hoeschen (No. 6232)<br>Virginia K. Lynch (No. 7423)<br>SHAW KELLER LLP |
| OF COUNSEL:<br>David Silbert<br>Sharif E. Jacob<br>Kristen E. Lovin<br>Ryan J. Hayward<br>Theresa M. Dawson<br>Yegina Whang<br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, CA  94111-1809<br>(415) 391-5400 | I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>nhoeschen@shawkeller.com<br>glynch@shawkeller.com<br>*Attorneys for Plaintiff MongoDB, Inc.* |

Dated: January 6, 2026